1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHRIS BYRD,                          No. 2:25-cv-03091-DC-CKD

12              Plaintiff,

13        v.                               ORDER DENYING PLAINTIFF'S MOTION
                                           FOR A TEMPORARY RESTRAINING
14    JOHN BARBIERI, et al.                ORDER AND GRANTING PLAINTIFF'S
                                           REQUEST FOR EXPEDITED DISCOVERY
15              Defendants.
                                           (Doc. No. 8)
16

17

18        This matter is before the court on Plaintiff Chris Byrd's motion for a temporary

19   restraining order and preliminary injunction, and request for expedited discovery. (Doc. No. 8.)

20   On November 13, 2025, a hearing was held on Plaintiff's motion and request. (Doc. No. 19.)

21   Attorney Aaron Crews appeared on behalf of Plaintiff. Attorney Ryan J. Maas appeared on behalf

22   of Defendant John Barbieri. For the reasons explained below, the court will deny Plaintiff's

23   motion for a temporary restraining order and grant his request for expedited discovery.

24                                    **BACKGROUND**

25   **A.    Factual Background**

26        In 2002, Plaintiff and Defendant established U.S. Night Vision Corporation ("Night

27   Vision"), serving as the sole directors and equal shareholders of the company. (Doc. Nos. 4-3 at ¶

28   3; 13-1 at ¶ 2.) For approximately twenty years, Night Vision has engaged in the manufacture and

                                           1

sale of night vision goggles, thermal viewers, thermal imagers, lasers, illuminators, ammunition, medical kits, tactical helmets, and firearm-related items/accessories. (Doc. No. 4-3 at ¶ 2.) In recent years, Plaintiff has been involved in the company's operations, finance, information technology, and human resources, while Defendant has focused on company sales. (*Id*. at ¶ 4.) Over the years, the company developed trade secrets, which included:

> a) confidential customer information, including current and prospective customer names and contact information, payment terms, discount information, customer demands and preferences, and Night Vision's customer data base; b) financial information, including customer sales volume, pricing and margin information; c) analysis of market trends, including pricing trends; d) strategic marketing and sales plans; e) manufacturing processes utilized in the production of night vision goggles and other products; and f) vendor pricing information.

(*Id*. at ¶ 6.) Night Vision has taken steps to ensure the confidentiality of its trade secrets through the use of a facility alarm system and limiting access to servers containing sales and financial data. (Id. at ¶ 9.) As an additional measure, the company handbook provides that the company's confidential business information should not be disclosed. (*Id*.)

At an unknown time, in preparation for a potential sale of the company, a third party developed a "Confidential Information Memorandum" ("the memorandum") containing Night Vision's trade secrets. (Doc. Nos. 4-3 at ¶ 7; 18.) The memorandum appears to have been developed from information provided by the parties as of July 31, 2022. (Doc. Nos. 4-3 at ¶¶ 6–7; 18 at 2–3.) The memorandum's purpose is to assist prospective purchasers or investors in deciding whether to proceed with further investigation of Night Vision and was to be delivered on behalf of the company by a third party, subject to the prior execution of a non-disclosure agreement. (Doc. No. 18 at 3.) On September 20, 2025, the parties continued to discuss Defendant's efforts to sell Plaintiff's portion of the company. (Doc. No. 13-2 at 2.)

In about October 2025, Plaintiff became concerned about Defendant's actions relating to the company and began to investigate those concerns. (Doc. No. 4-3 at ¶ 9.) Plaintiff alleges his investigation revealed Defendant engaged in a scheme intended to divert proceeds from the sale of Night Vision's products to himself. (Doc. Nos. 1 at ¶ 14; 4-3 at ¶ 9.)

Plaintiff alleges Defendant's diversionary scheme first involved a sale of Night Vision's

products to one of its existing customers, US Defense Systems, at an "abnormally discounted price" in or around May 2025. (Doc. Nos. 4-3 at ¶ 9; 4-5.) Defendant, acting as a dual agent for US Defense Systems, then assisted US Defense Systems in reselling the product to an end user at a much higher price. (Doc. Nos. 4-3 at ¶¶ 9–11; 4-6.) Defendant and US Defense Systems then split the profits of the sale, diverting potential profit and revenue from Night Vision to himself. (Doc. No. 4-3 at ¶ 9.)

Plaintiff further alleges Defendant's diversionary scheme involved Night Vision's purchase of ammunition from ARK Defense on September 16, 2025. (Doc. Nos. 4-3 at ¶ 12; 4-8 at 2.) That same day, Defendant, through an intermediary, resold the ammunition to a third party, Orion Wholesale, at an increased price. (Doc. Nos. 4-3 at ¶ 12; 4-8 at 7.) According to Plaintiff, Defendant and the intermediary then split the profits of the sale, diverting potential profit and revenue from Night Vision to himself. (Doc. No. 4-3 at ¶ 12.)

Lastly, Plaintiff alleges Defendant's diversionary scheme included his disclosure of the memorandum to two of Plaintiff's existing customers, Stillwood International, and Troy Campbell, on September 29, 2025, and October 15, 2025, respectively. (Doc. Nos. 4-3 at ¶¶ 14–15; 4-9; 4-10.)

Plaintiff asserts Defendant's actions have caused, and will continue to cause, irreparable harm to Night Vision. (Doc. No. 4-3 at ¶ 16.) More specifically, Plaintiff points to lost revenue and profit on sales to at least two customers, unsalvageable relationships with those two customers, irreparable damage to Night Vision's potential relationship with the end users involved in Defendants' diversionary scheme; damage to the company's goodwill and brand with potential customers once they find out about the scheme, and to the extent customers have been provided Night Vision's financial information, substantial risk that the information will be disseminated beyond those recipients. (Doc. Nos. 4-3 at ¶ 16; 19.)

**B.    Procedural Background**

On October 23, 2025, Plaintiff on behalf of Night Vision filed a verified shareholder derivative complaint for injunctive and other relief against Defendant and nominal defendant Night Vision alleging the following claims: (1) violation of the Defend Trade Secrets Act, 18

3

1    U.S.C. § 1836; (2) breach of fiduciary duty; and (3) unjust enrichment. (Doc. No. 1.) On the same

2    day, Plaintiff filed the pending motion and a request to file the memorandum

3    under seal. (Doc. Nos. 4, 5, 8.)[1] The court granted Plaintiff's request to seal on November 7,

4    2025. (Doc. No. 15.)

5           On November 5, 2025, Defendant filed an opposition to Plaintiff's motion for a temporary

6    restraining order. (Doc. No. 13.) On November 10, 2025, Plaintiff filed a reply thereto. (Doc. No.

7    16.) As noted above, on November 13, 2025, the court heard argument on the pending motion.

8    (Doc. No. 19.)

9                                    **LEGAL STANDARD**

10          The purpose of a temporary restraining order is to preserve the status quo and to prevent

11   irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose*

12   *Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). The standard governing the issuing

13   of a temporary restraining order is "substantially identical" to the standard for issuing a

14   preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

15   (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a

16   likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the

17   absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party;

18   and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

19   7, 20 (2008). A plaintiff seeking injunctive relief must make a showing on all four of these

20   prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

21          Courts within the Ninth Circuit may also consider a request for a temporary restraining

22   order using a "sliding scale" approach in which "a stronger showing of one element may offset a

23   weaker showing of another." *Id.* at 1131–35. "[W]hen plaintiffs establish that the balance of

24   hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction

25   is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go*

26

---

27   [1] Plaintiff's motion for temporary restraining order was initially filed without an attorney's
     signature. (Doc. No. 4 at 3.) On October 28, 2025, Plaintiff re-filed the pending motion with his
28   attorney's signature. (Doc. No. 8.)

1    *Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) (citing *All. for the Wild*

2    *Rockies*, 632 F.3d at 1135).

3          Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

4    showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Further, injunctive

5    relief "must be tailored to remedy the specific harm alleged" despite the district court's

6    "considerable discretion in fashioning suitable relief and defining the terms of an injunction."

7    *Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1195 (citations omitted). "The scope of

8    the [injunction] must be no broader and no narrower than necessary to redress the injury shown

9    by the plaintiff[s]." *Id.* (quoting *Cal. v. Azar*, 911 F. 3d 558, 584 (9th Cir. 2018)).

10   **DISCUSSION**

11   **A.    Plaintiff's Motion for Temporary Restraining Order**

12         In his motion for temporary restraining order, Plaintiff requests the court temporarily

13   restrain Defendant from using Night Vision's trade secrets or otherwise engaging in competition

14   against Night Vision. (Doc. No. 8 at 8.) To prevail on his motion, Plaintiff must demonstrate that

15   Night Vision is likely to suffer irreparable harm in the absence of such preliminary injunctive

16   relief. *Winter*, 555 U.S. at 20.

17         "Harm is irreparable if it cannot be adequately compensated or corrected at a later date by

18   legal remedies or monetary damages." *Donaghey v. Moorpark Bellingham Homeowners Ass'n,*

19   *Inc.*, No. 22-cv-08524-DSF-MAA, 2023 WL 9318509, at *9 (C.D. Cal. Nov. 29, 2023) (citing

20   *Cal. Pharma. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009)). Generally, economic

21   injury does not constitute irreparable harm because it can be compensated by an award of money

22   damages. *Potlongo v. Herff Jones, LLC*, 749 F. App'x 537, 538 (9th Cir. 2018) (citing *Rent-A-*

23   *Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

24   However, "intangible injuries, such as damage to ongoing recruitment efforts and goodwill,

25   qualify as irreparable harm." *Rent-A-Center, Inc.*, 944 F.2d at 603.

26         To demonstrate intangible irreparable harm, "the plaintiff must produce evidence that

27   establishes the harm's irreparable nature and imminence." *DejaVuAi Inc. v. Kapustin*, No. 25-cv-

28   00915-JNW, 2025 WL 2262328, at *4 (W.D. Wash. May 22, 2025); *see Herb Reed Enters., LLC*

1    *v. Fla Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (finding the district court erred in

2    finding irreparable harm when its analysis was "grounded in platitudes rather than evidence").

3    The evidence of tangible irreparable harm may not be speculative. *See Winter*, 555 U.S. at 21

4    (noting a plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in

5    order to obtain preliminary relief").

6        Plaintiff first alleges Defendant's actions will likely cause irreparable harm absent

7    injunctive relief because Night Vision has lost revenue and profit on sales from at least two

8    customers because of Defendant's alleged misconduct. (Doc. No. 1 at ¶ 16.) However, this harm

9    is not irreparable since it can be adequately compensated or corrected at a later date by legal

10   remedies or monetary damages. While Plaintiff correctly notes that a loss of anticipated profits

11   can demonstrate a likelihood of irreparable harm (Doc. No. 16 at 4) (citing *Patriot Contract*

12   *Servs., LLC v. U.S.*, 388 F. Supp. 2d 1010, 1026 (N.D. Cal. 2005)), Plaintiff has not alleged in his

13   complaint that Night Vision stands to lose anticipated profits from Defendant's actions.

14       Similarly, a likelihood of irreparable harm is not shown by Plaintiff's allegation that

15   Defendant's actions will cause harm to Night Vision's relationships with the customers involved

16   in Defendant's alleged diversionary scheme. (Doc. No. 1 at ¶ 16.) The court recognizes that a

17   "risk of losing established customers" from a defendant's action can "create lasting, irreparable

18   harm." *Lillge v. Verity*, No. 07-cv-02748-MHP, 2007 WL 2900568, at *7 (N.D. Cal. Oct. 2,

19   2007); *see DejaVuAi*, 2025 WL 2262328, at *4 (finding it likely plaintiff will face irreparable

20   harm because the evidence established ongoing and threatened harm to plaintiff's business

21   relationships); *Stuhlbarg*, 240 F.3d at 841 ("Evidence of threatened loss of prospective customers

22   or goodwill . . . supports a finding of the possibility of irreparable harm."). But here, Plaintiff

23   alleges no risk to Night Vision's relationships. Instead, Plaintiff acknowledges that Night

24   Vision's relationships with the customers involved in Defendant's scheme are "for all intents and

25   purposes, no longer salvageable" and "tainted." (Doc. Nos. 1 at ¶ 22; 16 at 4.) Because Plaintiff

26   alleges Night Vision's relationships are already "irreparably damaged," it is unclear what further

27   harm, if any, will result absent injunctive relief. (Doc. No. 1 at ¶ 22.)

28       Next, Plaintiff argues Night Vision will face irreparable harm without injunctive relief

1    because its goodwill with potential customers and its brand will be damaged once it is known that

2    Defendant participated in the alleged diversionary scheme. (Doc. Nos. 8 at 10; 19.) While "[t]he

3    potential to lose . . . goodwill . . . supports a finding of the possibility of irreparable harm," the

4    plaintiff must still "rel[y] on evidence to establish this type of irreparable harm, not mere

5    speculation of such harm." *Prime Grp., Inc. v. Dixon*, No. 2:21-cv-00016-RAJ, 2021 WL

6    1664007, at *6 (W.D. Wash. Apr. 28, 2021). Here, Plaintiff has not provided evidence of a

7    likelihood that Night Vision's reputation and goodwill will be damaged. Instead, Plaintiff only

8    speculates that such damage will incur, which is insufficient. Moreover, as the court emphasized

9    at the hearing on the pending motion, even if Plaintiff had provided evidence that Night Vision's

10    goodwill and brand will be damaged, it is unclear how injunctive relief would prevent that

11    damage. After all, the information that Defendant purportedly participated in a diversionary

12    scheme has already been made public through Plaintiff's filing of his complaint. (Doc. No. 1.)

13        Lastly, Plaintiff alleges Night Vision faces irreparable harm because there is a substantial

14    risk that its trade secrets "will [be] disseminated beyond the recipients" of the memorandum.

15    (Doc. No. 1 at ¶ 22.) Such dissemination cannot be enjoined by this court, even if it were deemed

16    to constitute irreparable harm, because those customers are not parties to this lawsuit and subject

17    to this court's jurisdiction. Specifically, the customers, Stillwood International, and Mr. Campbell

18    are non-parties in this action. Plaintiff has not sufficiently alleged that those non-parties are "in

19    active concert or participation" with Defendant. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807,

20    827 (N.D. Cal. 2025) ("Injunctions may apply to parties and nonparties who act 'in concert with'

21    named parties.") (citing *SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980)); Fed. R. Civ. P.

22    65(d)(2); *Cf. Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1093 (E.D. Cal. 2012)

23    (finding substantial evidence that nonparties, Hi-Tech FX, LLC, and J&M Displays were acting

24    in concert and in active participation with the defendant in accessing, obtaining, and/or using

25    plaintiff's trade secrets). Nor has Plaintiff even requested injunctive relief be issued against

26    Stillwood International or Mr. Campbell.

27        In sum, the court finds Plaintiff has not demonstrated a likelihood of imminent, irreparable

28    injury, as required by the second *Winter* factor to obtain a temporary restraining order against

1  Defendant. Because Plaintiff has not shown a likelihood of irreparable harm absent injunctive

2  relief, the court need not conduct an analysis of the remaining *Winter* factors. *See A Woman's*

3  *Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (holding that a

4  "plaintiff [must] make a showing on all four prongs to obtain a preliminary injunction").

5  Therefore, Plaintiff's motion for a temporary restraining order will be denied.

6        Plaintiff's deficient showing of irreparable harm could be cured, at least in part, with

7  evidence obtained in discovery of ongoing and imminent irreparable harm to Night Vision.

8  Therefore, the court will defer ruling on Plaintiff's motion for a preliminary injunction until

9  Plaintiff has been able to obtain expedited discovery (addressed below) and the parties have been

10  given an opportunity to supplement their briefing.

11  **B.**     **Plaintiff's Request for Expedited Discovery**

12        Under Federal Rule of Civil Procedure 26, the court has the authority to order expedited

13  discovery that takes place before the parties have conferred regarding the scope of discovery. Fed.

14  R. Civ. P. 26(d)(1). A party seeking expedited discovery must show "good cause" to depart from

15  the usual discovery process. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276

16  (N.D. Cal. 2002); *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). In

17  evaluating whether good cause has been shown, courts consider several factors, including: (1)

18  whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the

19  purpose for requesting expedited discovery; (4) the burden on defendants to comply with the

20  request; and (5) how far in advance of the typical discovery process the request is made. *Am.*

21  *LegalNet*, 673 F. Supp. 2d at 1067.

22        Plaintiff seeks expedited discovery relating to Defendant's alleged misappropriation of

23  trade secrets and diversion of any monies from Night Vision to himself. (Doc. No. 8 at 11.)

24  Specifically, Plaintiff seeks all documents:

25          (a) relating to Barbieri's possession and/or use of Night Vision's
        financial or customer information; (b) [] reflecting completed or

26          contemplated transactions designed for the purpose of diverting
        revenue and/or profit from Night Vision to Barbieri; (c) reflecting

27          orders placed by Night Vision's customers where the proceeds from
        the sale or sales were paid to, or directed to be paid to, any entity or

28          person other than Night Vision; (d) relating to or evidencing

> Barbieri's involvement in the establishment or operation of any entity intended to [compete] with Night Vision or for the purpose of diverting revenue and/or profits from Night Vision to Barbieri.

(Doc. No. 4-11 at 4.) Plaintiff also requests to take the deposition of Defendant. (Doc. No. 8 at 11.)

Defendant did not address Plaintiff's request for expedited discovery in his opposition to Plaintiff's motion. At the hearing, however, Defendant expressed his opposition to Plaintiff's request. (Doc. No. 19.)

On balance, the court finds Plaintiff has demonstrated good cause for expedited discovery. A motion for preliminary injunction is pending before the court, and expedited discovery may help identify the irreparable harm, if any, that Night Vision faces. *Pyro Spectaculars*, 861 F. Supp. 2d at 1086 (allowing expedited discovery that included forensic computer examinations and deposition prior to preliminary injunction). Indeed, "[d]istrict courts in the Ninth Circuit regularly permit expedited discovery in cases that, like this one, implicate claims of improper use of confidential information or trade secrets." *Citibank, N.A. v. Mitchell*, No. 24-cv-08224-CRB, 2024 WL 4906076, at *6 (N.D. Cal. Nov. 26, 2024); s*ee Comet Techs. USA Inc. v. Beuerman*, No. 18-cv-01441-LHK, 2018 WL 1990226, at *7 (N.D. Cal. Mar. 15, 2018) ("Quickly determining what information Defendant removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential in order to minimize any harm to Plaintiff's competitive position.").

**CONCLUSION**

Accordingly, for the reasons explained above,

1.    Plaintiff's motion for a temporary restraining order (Doc. No. 8) is DENIED;

2.    Plaintiff's request for expedited discovery (Doc. No. 8) is GRANTED; and

3.    The parties shall meet and confer and file a joint proposed schedule for the production of expedited discovery, the filing of supplemental briefing for Plaintiff's motion for preliminary injunction, and a proposed hearing date for the motion by November 24, 2025.  If the parties cannot agree to a proposed schedule and hearing date after meeting and conferring, they must file their respective

9

proposals by November 24, 2025.


    IT IS SO ORDERED.

Dated:    **November 17, 2025**


Dena Coggins
United States District Judge

10